UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
EUGENE TENENBAUM,                                :

            Plaintiff,                  :

     -against-                         : **REPORT AND RECOMMENDATION**

COMMISSIONER OF SOCIAL SECURITY,       :        13 CV 6832 (CM)(KNF)

            Defendant.              :
--------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/1/15

TO THE HONORABLE COLLEEN MCMAHON, UNITED STATES DISTRICT JUDGE:

    On September 25, 2013, Eugene Tenenbaum ("Tenenbaum") commenced this action <u>pro se</u> against the Commissioner of Social Security ("Commissioner"), seeking review of an administrative law judge's ("ALJ") decision finding him ineligible for Supplemental Security Income ("SSI") benefits, pursuant to 42 U.S.C. §§ 401 <u>et seq.</u> The complaint was accompanied by the July 22, 2013 Notice of Appeals Council Action denying review of the ALJ's January 25, 2012 decision. Before the Court is the Commissioner's motion for judgment on the pleadings, made pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Tenenbaum submitted no papers in opposition to the Commissioner's motion and the motion is therefore unopposed.

**BACKGROUND**

***Administrative Procedural History***

    Tenenbaum filed an application for SSI benefits on August 27, 2010, alleging that he had been disabled since September 1, 2007, due to drowsiness, obsessive-compulsive personality disorder, attention-deficit-hyperactivity disorder, multi-level spondylolisthesis, osteoarthritis of the spine and hips, and right wrist injury from 1965. Tenenbaum's application was denied and

MEMO ENDORSED

Copies mailed/faxed/handed to counsel on 6/1/15

*[Handwritten endorsement:]* 4/1/2015 No objection have been filed and the time for making objections has expired. After review, the court adopts the learned Magistrate's report as its opinion. The Commissioner's motion for judgment on the pleadings is GRANTED. Clerk to enter judgment accordingly and close case. CM

he requested a hearing before an ALJ. On December 16, 2011, Tenenbaum appeared with a

representative at a hearing before ALJ Robert C. Dorf. On January 25, 2012, the ALJ issued a

decision finding that Tenenbaum was not disabled because he has the residual functional

capacity to perform medium work with certain limitations and, although Tenenbaum is unable to

perform his past work, a significant number of jobs exist in the national economy that he can

perform. Tenenbaum requested a review by the Social Security Administration's Appeals

Council of the ALJ's decision. That request was denied on July 22, 2013, making the ALJ's

decision the final decision of the Commissioner. This action followed. Tenenbaum alleges that

he is entitled to receive SSI benefits because he suffers from psychological disorders including

anxiety, obsessions, compulsions, bipolarity, depression and mania, as well as spine and hip joint

impairments, including arthritis.

### The ALJ's Decision

The issue before the ALJ was whether Tenenbaum was disabled from August 27, 2010,

the date his application for SSI benefits was filed, to the date of the decision. The ALJ found

that Tenenbaum: (1) has not engaged in substantial gainful activity since August 27, 2010;

(2) has the following severe impairments: a bipolar disorder, an obsessive-compulsive disorder,

an attention-deficit-hyperactivity disorder, and osteoarthritis of the spine and hips; (3) does not

have an impairment or combination of impairments that meets or medically equals one of the

impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"); (4) has the

residual functional capacity to perform medium work as defined in 20 C.F.R. § 416.967(c),[1]

---

[1]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or
carrying of objects weighing up to 25 pounds. If someone can do medium work, [the Social
Security Administration determines] that he or she can also do sedentary and light work."
20 C.F.R. § 416.967(c).

except that he has the capacity to perform only simple and repetitive tasks in a low-stress

environment, which is defined as requiring no decision-making; (5) is unable to perform any past

relevant work; and (6) taking into consideration his age, education, work experience and residual

functional capacity, is able to perform jobs that exist in significant numbers in the national

economy. The ALJ concluded that Tenenbaum has not been under a disability from August 27,

2010, the date his application for SSI benefits was filed.

   In discussing Tenenbaum's impairments, which the ALJ found were properly

characterized as "severe," the ALJ noted that their existence was confirmed by the medical

evidence contained in the record for this case. The ALJ also noted that the impairments resulted

in limitations that significantly affected Tenenbaum's ability to perform basic work activities.

The ALJ noted that Tenenbaum has both psychological and physical impairments and that the

medical evidence shows that his psychological impairments include bipolar disorder, an

obsessive-compulsive disorder and attention-deficit-hyperactivity disorder. The ALJ noted that

the symptoms associated with these impairments included poor sleep, feelings of worthlessness,

increased energy, racing thoughts and anxiety.

   As to Tenenbaum's physical impairments, the ALJ found that the medical evidence

contained in the record showed that Tenenbaum had a history of arthritis of the hips and back.

The ALJ noted that a medical report dated March 3, 2009, indicated hip pain and back pain

causing some difficulty with excessive bending and kneeling and prolonged walking and

standing. On March 3, 2009, Tenenbaum was examined by internist Dr. Ting-Chin David Shen

("Dr. Shen") at New York Presbyterian Hospital. Dr. Shen found that Tenenbaum had suffered

from osteoarthritis of both hips for the previous five years and spinal bifida at the S1 and upper

thoracic level, and that he experienced drowsiness after breakfast. Dr. Shen noted that x-rays of

Tenenbaum's hips from November 2008 showed no displaced fracture or dislocation of the hip and x-rays of his thoracic spine revealed no evidence of displaced fracture or mal-alignment. Dr. Shen's assessment was that Tenenbaum was able to control his osteoarthritis with home exercise. Dr. Shen also found that Tenenbaum was "employable" with functional limitations; specifically, his ability to bend and kneel were limited by his back problems and he should avoid work that required excessive bending and kneeling. In addition, Dr. Shen found that prolonged standing or walking caused pain in the hips.

Tenenbaum visited Dr. Shen again on June 4, 2009, and December 14, 2009. Dr. Shen reported that Tenenbaum was taking Wellbutrin, which improved his morning drowsiness. The plaintiff visited Dr. Shen again on March 21, 2010, for a routine follow up. On that date, the doctor reported that a sleep study was "essentially negative." A physical examination of the plaintiff was unremarkable and Dr. Shen concluded that the plaintiff's osteoarthritis was moderately controlled with home exercise.

On May 10, 2010, Tenenbaum was examined by Dr. Jeanne Goodman ("Dr. Goodman"), a psychiatrist, who completed a "Treating Physician's Wellness Plan Report" as part of the Human Resources Administration's public assistance program. Dr. Goodman diagnosed depression with sleep apnea, obsessive-compulsive disorder and anxiety disorder, not otherwise specified. Dr. Goodman found that the plaintiff experienced mood symptoms, distractability with trouble concentrating, inability to complete tasks, psychomotor slowing and fatigue, obsessive ruminations and anxiety. She determined that the plaintiff's prognosis was fair, he was tolerating medication and attending weekly psychotherapy. She reported that the plaintiff was impaired by his symptoms and had poor functional capacity and an inability to focus and complete tasks and was temporarily unemployable.

4

On July 2, 2010, Tenenbaum visited Dr. Allison Michels-Pettine ("Dr. Michels-Pettine"),
a rehabilitation specialist, complaining of lower back pain. Upon examination, Dr. Michels-
Pettine found the plaintiff had full lumbar range of motion, mild tenderness with mild flexion
five-to-ten degrees and extreme end-range extension, but full active range of motion otherwise.
His L3 or L4 spinous processes were tender to palpation. He had full strength bilaterally in the
lower extremities and his reflexes were normal but diminished. Dr. Michels-Pettine assessed a
lumbar sprain in the L3 or L4 and recommended that the plaintiff continue his current treatment
and slowly increase his exercise level and maintain posture.

On October 18, 2010, Tenenbaum visited psychologist Dr. Howard Tedoff ("Dr. Tedoff")
for a consultative examination in connection with his application for SSI benefits. He traveled
alone to the examination, by public transportation, and reported that he lived in a cooperative
apartment building, had poor appetite and normal sleeping habits. He reported occasional
balance and coordination problems and that his favorite activity was "lawsuits." He cooked,
shopped, maintained his apartment and had a mutual helping relationship with a neighbor. He
reported attention-deficit-hyperactivity disorder and obsessive-compulsive disorder and stated
that he was depressed and anxious and seeing a psychiatrist weekly.

Dr. Tedoff stated that the plaintiff is a college graduate with a degree in architecture,
reads very well, was quite good at math, and was right-handed with good manual controls.
Dr. Tedoff found the plaintiff to be cooperative with an adequate manner of relating, social
skills, and overall presentation. He reported pain in the hip. The plaintiff's speech intelligibility
was good; he spoke with a Polish accent, but conversation was interactive and relevant. His
thought processes were coherent with no hallucinations, delusions, or disordered thinking, and
he denied any suicidal or homicidal ideation. The plaintiff's mood was dysthymic with mild low

5

level depression.  He could do calculations and serial sevens.  His memory was intact, and

insight and judgment were good and fair, respectively, and his cognitive functioning was

estimated to be at average or above, with a good fund of information.  Dr. Tedoff assessed

depressive disorder, secondary to physical issues, and obsessive-compulsive disorder (OCD) and

attention-deficit-hyperactivity disorder (ADHD), inattentive type, as alleged by the plaintiff.

  In a medical source statement, Dr. Tedoff stated that the plaintiff could follow and

understand simple directions and instructions and perform simple tasks, his attention and

concentration skills were good, but he was not able to maintain a regular schedule. His decision-

making skills were appropriate, he could relate adequately to others, and might not be able to

deal adequately with stress in the workplace.  According to Dr. Tedoff, the prognosis for

Tenenbaum being able to look for and obtain gainful employment was guarded to poor.  He had

last worked ten years earlier and has significant physical problems that have affected his ability

to seek employment.

  A consultative physical examination was performed by Dr. Louis Tranese ("Dr.

Tranese"), an orthopedist, on October 18, 2010.  On that occasion, the plaintiff complained of

bilateral hip pain and lower back pain secondary to arthritis, and mid-thoracic back pain, which

he described as a dull, crampy, stiff ache localized in the lumbar and thoracic region.  He did not

complain of radiation of his back pain to the legs, or numbness, tingling, or weakness of the

lower extremities. Activities such as climbing stairs, long distance walking, and standing long

periods aggravated his hip pain and his back pain was aggravated by frequent bending and heavy

lifting.  Dr. Tranese reported that Tenenbaum was independent and showered, bathed, dressed,

and groomed himself daily, cooked daily, shopped one to two times a week, and performed

"cleaning and laundry chores twice per year."

Upon physical examination, the plaintiff was in no acute distress with normal gait. He could walk on his heels and toes without difficulty. He could squat fully, did not need help changing for the examination or getting on and off the examination table, and was able to rise from a chair without difficulty. The plaintiff had full flexion, extension, lateral flexion, and rotary movements bilaterally of his cervical spine and no cervical or paracervical pain or spasm. His thoracic and lumbar spines had full flexion, extension, lateral flexion, and rotary movements bilaterally. The plaintiff reported mild tenderness to palpation in the bilateral thoracic and lumbar paraspinal region. There was no spasm, scoliosis, or kyphosis. The plaintiff had full range of motion of the hips, knees, and ankles bilaterally. X-rays of the plaintiff's lumbosacral spine showed straightening and x-rays of his right hip were negative. Dr. Tranese diagnosed bilateral hip pain and chronic back pain and diabetes by history.

In a medical source statement, Dr. Tranese stated that the plaintiff had mild-to-moderate limitations in heavy lifting and mild limitations in frequent bending, squatting, and stair climbing. Dr. Tranese found that the plaintiff had no other physical limitations and his prognosis was good.

The ALJ took note of Dr. Tranese's report as well as the other medical evidence included in the record and concluded that Tenenbaum's impairments resulted in limitations that significantly affected his ability to perform basic work activities such as heavy lifting, concentration and social functioning and, hence, constituted severe impairments. The ALJ found that, although Tenenbaum's impairments are severe, they do not meet or medically equal the conditions described in the relevant sections of the Listings. According to the ALJ, the criteria identified in the relevant paragraphs of sections 12.04 ("Affective Disorders"), 12.06 ("Anxiety Related Disorders"), and 12.08 ("Personality Disorders") of the Listings are not met in

Tenenbaum's case because, while the medical evidence substantiated the presence of an

affective disorder, anxiety related disorder and personality disorder, as set forth in paragraph A

of each section, the record did not establish the presence of the additional conditions required.

Specifically, with respect to sections 12.04 and 12.06, the record failed to establish that the

plaintiff either met the requirements set forth in paragraphs A and B, or met the requirements set

forth in paragraph C; with respect to section 12.08, the record failed to show that the plaintiff

met the requirements set forth in paragraphs A and B. See 20 C.F.R. Part 404, Subpart P,

Appendix 1 §§ 12.04, 12.06, 12.08.

Paragraph B of Listings 12.04, 12.06 and 12.08 requires, in each case, that the claimant's

mental impairment result in at least two of the following conditions: (a) marked restriction of

activities of daily living; (b) marked difficulties in maintaining social functioning; (c) marked

difficulties in maintaining concentration, persistence or pace; or (d) repeated episodes of

decompensation, each of extended duration. See 20 C.F.R. Part 404, Subpart P, Appendix 1

§§ 12.04B, 12.06B, 12.08B.

Paragraph C of Listing 12.04 requires a "[m]edically documented history of a chronic

affective disorder of at least 2 years' duration that has caused more than a minimal limitation of

ability to do basic work activities, with symptoms or signs currently attenuated by medication or

psychosocial support and one of the following:

> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that
> even a minimal increase in mental demands or change in the environment would
> be predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function outside a highly
> supportive living arrangement, with an indication of continued need for such an
> arrangement.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04C.  Paragraph C of Listing 12.06 requires

a "complete inability to function independently outside the area of one's home." 20 C.F.R.

Part 404, Subpart P, Appendix 1 § 12.06C.

Addressing the criteria set forth in paragraph B of each listing, the ALJ found as follows: with respect to the activities of daily living, the ALJ determined that Tenenbaum is only moderately restricted because, as he reported in a function report dated October 4, 2010, he is able to travel independently using public transportation, and is able to take care of his personal needs, including cooking, shopping and doing household chores. The ALJ noted further that Tenenbaum testified at the administrative hearing that he lives alone and is able to feed and bathe himself.

With respect to social functioning, the ALJ found, based on Tenenbaum's testimony, that Tenenbaum has only moderate difficulties; although he engages in no social activities, he gets along socially with people in his building and, although he has no friends, he frequents the library during the day and says he has a good relationship with library staff. The ALJ noted that Tenenbaum is able to shop in the supermarket without conflict and talks to his sister on the phone and regularly communicates with his parents, brother and an old friend in Poland via electronic mail.

With respect to concentration, persistence and pace, the ALJ found that Tenenbaum has mild difficulties: he writes critical articles on architecture and art engineering for Amazon.com and Architectural Digest and these articles have been published on line. He uses his computer extensively. In addition, although he rides his bicycle through red lights, which he notes is common for bicyclists in New York City, he has never had an accident on his bicycle or struck a pedestrian and, in general, rides his bicycle safely.

With respect to decompensation, the ALJ found that Tenenbaum has experienced no episodes of decompensation of extended duration. Tenenbaum testified that he was fired from his job for not "signing off" on corrupt practices of the New York State Dormitory Authority and that he had worked on CAD and AUTO computer programs for Columbia University. The ALJ noted that there was no evidence of a drug or alcohol problem and no suicide attempts or psychiatric hospitalizations.

Based on these findings, the ALJ determined that the criteria indicated at paragraph B of each of the relevant sections of the Listings were not met in this case. In addition, the ALJ also found that the evidence failed to establish the presence of any of the conditions described in paragraph C of sections 12.04 and 12.06. Consequently, the ALJ found that Tenenbaum's impairments, while severe, do not meet or medically equal the conditions described in the relevant listings.

At the next step of his analysis, the ALJ found that, based on consideration of the entire record, Tenenbaum has a residual functional capacity to perform medium work, as defined in 20 C.F.R. § 416.967(c), with certain limitations, that is, he is able to perform only simple repetitive tasks in a low stress environment, which is defined as requiring no decision-making.

In reaching this conclusion, the ALJ noted that he considered, first, Tenenbaum's symptoms and the extent to which these were reasonably consistent with the objective medical evidence and other evidence, that is, whether there was an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the reported symptoms. Secondly, the ALJ considered the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit Tenenbaum's functioning. For this purpose, whenever statements about the intensity, persistence or functionally limiting effects of

pain or other symptoms were not substantiated by objective medical evidence, the ALJ made a finding on the credibility of the statements based on a consideration of the entire case record. The ALJ noted that he also considered opinion evidence.

The ALJ recited the following evidence. Tenenbaum lives alone; he testified that he hoards things and that his apartment was "clogged." He stated that he sued the cooperative organization in the building in which he lives over rent payments for the period 2007 to 2009 but now realizes that his legal actions, which were not successful, were symptoms of his obsessive-compulsive disorder. The ALJ also took note of the evidence, set forth above, concerning Tenenbaum's abilities with respect to the activities of daily living, his social functioning, his concentration and persistence, and any tendency toward decompensation in reaching his conclusion concerning Tenenbaum's residual functional capacity. Regarding Tenenbaum's physical capabilities, the ALJ noted that Tenenbaum is able to do 10-15 pull-ups with a chinning bar, as well as pushups, and is able to walk one mile and ride a bicycle loaded with groceries for five miles.

The ALJ stated that he had considered Tenenbaum's allegations and testimony and found that his statements concerning the intensity, persistence and limiting effects of his symptoms were not credible for several reasons. First, the diagnostic tests performed did not support Tenenbaum's allegations. While he complained of poor sleep, a sleep study was negative. Also, Tenenbaum's complaints concerning his back and hip pain were not supported by the findings of radiological studies; x-rays of his hips performed in November 2008 revealed no fracture, displacement or dislocation, and x-rays of the thoracic spine showed no evidence of a displaced fracture or mal-alignment.

Secondly, the ALJ determined that the findings of physical examinations did not support Tenenbaum's allegations.  The consultative physical examination performed by Dr. Tranese on October 18, 2010, showed normal function, except for mild tenderness to palpation in the thoracic lumbar spine area.  Thirdly, the ALJ found that Tenenbaum's activity level was not consistent with his allegations.  He used home exercise for symptom control of osteoarthritis and, as noted above, is able to do 10-15 pull ups with a chinning bar, as well as pushups, and is able to walk one mile and ride a bicycle loaded with groceries fives miles.  Based on these and other factors already discussed, the ALJ found that Tenenbaum's allegations and testimony were not fully credible.

Regarding opinion evidence, the ALJ noted that Dr. Goodman, a psychiatrist, reported on May 10, 2010, that Tenenbaum had poor functional capacity and is unable to focus or complete tasks.  However, the ALJ found that this assessment was contradicted by evidence of Tenenbaum's ability to write articles, exercise, attend appointments, take prescription medication and comply with treatment.  As a result, the ALJ gave Dr. Goodman's opinion little weight.

The ALJ also gave little weight to the statement in the psychiatric medical report provided by Tenenbaum's representative at the hearing that Tenenbaum has been unable to maintain a job for an extended period due to his psychiatric symptoms; the ALJ found that this was a vague statement that did not discuss in detail Tenenbaum's specific functional limitations.  The ALJ also gave little weight to the opinion of Dr. Judith Joseph, a psychiatrist who examined Tenenbaum on December 13, 2010, that Tenenbaum is unable to function occupationally, based on his finding that her opinion was vague and inconsistent with evidence of Tenenbaum's various occupational activities.

12

The ALJ gave some weight to the opinion of consultative psychologist Dr. Tedoff that

Tenenbaum can follow and understand simple directions and instructions and perform simple

tasks but not maintain a regular schedule.  The ALJ found that this opinion was based on a

thorough examination of Tenenbaum.

The ALJ found that the opinion of Dr. Shen, that Tenenbaum has a limited ability to bend

and kneel and limitation in prolonged walking and standing, should be given little weight

because it was not consistent with the findings on physical examination or with Tenenbaum's

activity level.  The opinion of the consultative examiner that Tenenbaum has mild to moderate

limitations in heavy lifting and mild restrictions in frequent bending, squatting and stair climbing

was accorded some weight because, in the ALJ's view, it was based on findings arrived at

through physical examination.

The ALJ noted that Tenenbaum's past relevant work included positions as a computer

programmer/drafter and as a construction maintenance supervisor.  He noted that both jobs

require light exertion but extensive decision-making and more than simple and repetitive tasks.

Consequently, the ALJ determined that Tenenbaum cannot perform past relevant work.

At the final step of his analysis, the ALJ found that Tenenbaum was unable to perform

any past relevant work and that, considering his age, education, work experience and residual

functional capacity in the context of the medical-vocational guidelines, jobs exist in significant

numbers in the national economy that he can perform.  The ALJ noted that, when a claimant

cannot perform substantially all of the exertional demands of work at a given level of exertion,

or has nonexertional limitations, the medical-vocational rules may be used as a framework for

decision making, unless there is a rule that directs a conclusion of "disabled" without

considering the additional limitations.  The ALJ found that, in Tenenbaum's case, the additional

limitations involved had little or no effect on the relevant occupational base, that is, unskilled medium work. He therefore determined that a finding of "not disabled" was appropriate under the framework of the applicable rules.

### *Commissioner's Contentions*

The Commissioner contends that substantial evidence supports the ALJ's determination that Tenenbaum's severe impairments do not meet or medically equal any listed impairment and that he retains the residual functional capacity to do medium work with certain limitations. In addition, according to the Commissioner, the ALJ assessed Tenenbaum's credibility properly, and his resulting findings should be accorded deference. The Commissioner also contends that the ALJ found properly that the restrictive opinions of Tenenbaum's treating physicians were not supported by the record and that he gave appropriate weight to the treating physicians' findings. Moreover, according to the Commissioner, substantial evidence supports the ALJ's finding that Tenenbaum is capable of performing work that exists in the national economy.

As noted above, Tenenbaum submitted no papers in opposition to the Commissioner's motion and the motion is therefore unopposed.

## **DISCUSSION**

### *Legal Standard*

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

14

> A district court may set aside the Commissioner's determination that a claimant is
> not disabled only if the factual findings are not supported by "substantial evidence"
> or if the decision is based on legal error.  Substantial evidence "means such relevant
> evidence as a reasonable mind might accept as adequate to support a conclusion."

Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

"Failure to apply the correct legal standard constitutes reversible error, including, in

certain circumstances, failure to adhere to the applicable regulations."  Kohler v. Astrue,

546 F.3d 260, 265 (2d Cir. 2008) (internal citations omitted).  "It is not the function of a

reviewing court to decide *de novo* whether a claimant was disabled, or to answer in the first

instance the inquiries posed by the five-step analysis set out in the [Social Security

Administration] regulations."  Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (citation

omitted).

To qualify for disability benefits, an individual must be unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The

regulations establish a five-step process for determining a disability claim.  See 20 C.F.R.

§§ 404.1520(a)(4).

> If at any step a finding of disability or nondisability can be made, the [Social Security
> Administration] will not review the claim further.  At the first step, the agency will find
> nondisability unless the claimant shows that he is not working at a "substantial gainful
> activity."  At step two, the [Social Security Administration] will find nondisability unless
> the claimant shows that he has a "severe impairment," defined as "any impairment or
> combination of impairments which significantly limits [the claimant's] physical or
> mental ability to do basic work activities."  At step three, the agency determines whether
> the impairment which enabled the claimant to survive step two is on the list of
> impairments presumed severe enough to render one disabled; if so, the claimant qualifies.
> If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which
> the [Social Security Administration] assesses whether the claimant can do his previous
> work; unless he shows that he cannot, he is determined not to be disabled.  If the claimant

survives the fourth stage, the fifth, and final, step requires the [Social Security Administration] to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003) (citations omitted).

If the ALJ finds that a claimant's "impairment(s) does not meet or equal a listed impairment, [the ALJ] will assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e). Residual functional capacity "is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the [residual functional capacity] assessment must include a discussion of the individual's abilities on that basis." SSR 96-8P, 1996 WL 374184. The residual functional capacity assessment is used at step four of the sequential evaluation process to determine if the claimant can do past relevant work, and at step five to determine if the claimant can adjust to other work. See 20 C.F.R. § 404.1520(e).

> In meeting her burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's [residual functional capacity] in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy.

Gray v. Chater, 903 F. Supp. 293, 297-98 (N.D.N.Y. 1995).

With regard to a claimant's credibility, "[w]hen determining a claimant's [residual functional capacity], the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints

16

without question; he may exercise discretion in weighing the credibility of the claimant's

testimony in light of the other evidence in the record." Genier v Astrue, 606 F.3d 46, 49 (2d Cir.

2010) (citations omitted).

If "a treating source's opinion on the issue(s) of the nature and severity of [the

claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in [the

claimant's] case record, [it will be given] controlling weight." 20 C.F.R. § 416.927(c)(2).

Unless the ALJ gives a treating physician's opinion controlling weight, the ALJ must consider

the following factors in deciding what weight to accord to any medical opinion: (1) the existence

of an examining relationship; (2) the existence of the treatment relationship, the length of the

treatment relationship and the frequency of examination; (3) supportability, that is, more weight

is given the more relevant the evidence and the better the explanation presented are in supporting

an opinion; (4) consistency of the opinion with the record; (5) specialization; and (6) other

relevant factors. See C.F.R. § 416.927(c).

### *Application of Legal Standard*

#### Whether the ALJ's Decision Is Supported by Substantial Evidence

Substantial evidence supports the ALJ's finding that Tenenbaum does not have an

impairment that meets or medically equals the impairments included in the relevant sections of

the Listings. As noted above, the ALJ considered the criteria for Listings 12.04, 12.06 and 12.08

and found that the medical evidence did not support a finding that Tenenbaum's condition meets

the criteria for the relevant portions of those listings.

The ALJ also concluded reasonably that Tenenbaum retained the residual functional

capacity to perform medium work, with the exception that he is able to perform only repetitive

tasks in a low stress environment. In determining Tenenbaum's residual functional capacity, the ALJ considered, inter alia, whether Tenenbaum's allegations and testimony about the intensity, persistence and limiting effects of his symptoms were credible. The ALJ concluded that they were not credible to the extent that they were inconsistent with: (1) diagnostic tests performed, including a sleep study radiological studies and x-rays of the hips and thoracic spine; (2) the findings of physical examinations, including the examination performed by consultative examiner Dr. Tranese in October 2010; and (3) Tenenbaum's activity level as reported by him and as indicated in statements from physicians, including Dr. Shen and Dr. Tranese. The ALJ's assessment of Tenenbaum's credibility was proper. The ALJ credited Tenenbaum's testimony about his symptoms and that they could reasonably be expected to be caused by his medically determinable impairments. However, he found Tenenbaum's statements about the intensity, persistence and limiting effects of these symptoms were not corroborated by the medical evidence and other evidence in the record, including Tenenbaum's work history.

In reaching his conclusion, the ALJ reviewed the medical evidence and gave less weight, appropriately, to the findings of Tenenbaum's treating physicians, including Dr. Goodman and Dr. Joseph, because he found that these were contradicted by other evidence, including the plaintiff's own testimony regarding his activities and the findings on physical examination. At the same time, the ALJ gave some weight to the opinions of Dr. Shen, as well as the consultative examiner, Dr. Tranese, and the consultative psychologist, Dr. Tedoff, because he determined that these opinions were based on a thorough examination of the plaintiff.

At the final step of his analysis, the ALJ determined that other work exists in the national economy that Tenenbaum can perform. In arriving at this determination, the ALJ considered Tenenbaum's residual functional capacity, age, level of education and work experience. The

18

ALJ then determined to apply Rules 203.03 and 203.04 of the medical-vocational guidelines. As

the Commissioner concedes, the ALJ erred in his determination to apply Rules 203.03 and

203.04, because they pertain to individuals "closely approaching retirement age" whereas

Tenenbaum, who was 55 years old at the time the ALJ issued his decision, belonged to the

category "advanced age." Persons falling into the category "advanced age" are properly

assessed in Rules 203.10 through 203.17. In Tenenbaum's case, taking into considering his

education and previous work experience, the ALJ should have applied Rules 203.11 and 203.12.

See 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 203.11, 203.12. However, a review of the

medical-vocational guidelines reveals that, under both sets of rules, a finding of "not disabled" is

indicated. Hence, under the circumstances, it appears that the ALJ's error with respect to the

designation of Tenenbaum's age classification was harmless, insofar as it did not alter the

finding as to disability. Moreover, the burden of showing that the error was harmful falls on the

plaintiff in this case. See Shinseki v. Sanders, 556 U.S. 396, 409-10, 129 S. Ct. 1696, 1705-06

(2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking

the agency's determination."). The plaintiff has not met that burden and also has failed to show

that he suffered any prejudice from the ALJ's erroneous classification of his age. See id. at 409.

("[T]he party that seeks to have a judgment set aside because of an erroneous ruling carries the

burden of showing that prejudice resulted.") (citation and internal quotation marks omitted).

When the limitations and restrictions imposed by a claimant's impairments and related

symptoms, such as pain, affect his ability to meet both the exertional and nonexertional demands

of a job, the ALJ may use the medical-vocational guidelines to arrive at a decision concerning

the claimant's ability to perform jobs in the economy. See 20 C.F.R. § 416.969a(d).

In this case, the ALJ found that the plaintiff's mental and physical impairments did not limit his

19

ability to perform unskilled work, including simple and repetitive tasks in a low-stress environment defined as requiring no decision-making. Thus, the plaintiff's exertional and nonexertional limitations did not result in an additional loss of work capacity, and the ALJ's use of the medical vocational guidelines was permissible in this case. For these reasons, the ALJ's finding that Tenenbaum is not disabled is supported by substantial evidence.

Whether the ALJ's Decision Was Contrary To Law

The ALJ followed all five steps of the sequential analysis required to be performed in determining disability. At each of the five steps, he articulated and applied the correct legal standard in making his determinations. The Court perceives no legal error in the ALJ's determinations. Thus, the ALJ's decision is not contrary to law.

## RECOMMENDATION

For the reasons set forth above, I recommend that the defendant's motion for judgment on the pleadings, Docket Entry No. 19, be granted.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Colleen McMahon, 500 Pearl Street, Room 1640, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge McMahon. *Failure to file objections within fourteen (14) days will result in a waiver of objections and*

20

*will preclude appellate review.* See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985);

Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
February 25, 2015

Copy mailed to:

Eugene Tenenbaum

Respectfully submitted,

Kevin Nathaniel Fox
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

21